IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

LINDA ROPER                                                          PLAINTIFF

V.                                      NO. 15-5306

CAROLYN COLVIN,
Acting Commissioner of the Social Security Administration            DEFENDANT


**MEMORANDUM OPINION**


Plaintiff, Linda Roper, brings this action pursuant to 42 U.S.C. §405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for a period of disability and disability insurance benefits (DIB) under the provisions of Title II of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. §405(g).

I.      **Procedural Background:**

Plaintiff protectively filed her current application for DIB on January 4, 2013, alleging an inability to work since July 8, 2012,[1] due to severe arthritis in her right hip, lower back, and left shoulder. (Doc. 12, pp. 183, 187).  An administrative hearing was held on July 18, 2014, at which Plaintiff appeared with counsel and testified. (Doc. 12, pp. 32-68).

By written decision dated August 21, 2014, the Administrative Law Judge (ALJ) found that during the relevant time period, Plaintiff had an impairment or combination of

---

[1] At the hearing held before the ALJ on June 18, 2014, Plaintiff amended her onset date to July 25, 2012. (Doc. 12, p. 41).

impairments that were severe – degenerative disc disease of the cervical spine with bulging discs at C3-4, C5-6, and C6-7; osteoarthritis; fibromyalgia; and depression. (Doc. 12, p. 18). However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Doc. 12, p. 18). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform sedentary work as defined in 20 CFR 404.1567(a) except she is limited to jobs that do not require overhead reaching, and she is further limited to jobs involving simple task[sic] with simple instructions.

(Doc. 12, p. 20). With the help of the vocational expert (VE), the ALJ determined that during the relevant time period, Plaintiff could not perform her past relevant work, but could perform such jobs as card call operator, cutter/paster, and photocopy document preparer. (Doc. 12, p. 26).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on November 23, 2015. (Doc. 12, pp. 5-10). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 6). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 9, 11).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

**II. Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a

reasonable mind would find it adequate to support the Commissioner's decision.  The ALJ's decision must be affirmed if the record contains substantial evidence to support it.  Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently.  Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).  In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed.  Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §423(d)(1)(A).  The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§423(d)(3).  A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing her claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the

impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given her age, education, and experience. See 20 C.F.R. § 404.1520.  Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her RFC.   See McCoy v. Schneider, 683 F.2d 1138, 1141-42 (8th Cir. 1982);  20 C.F.R.§ 404.1520, abrogated on other grounds by Higgins v. Apfel, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. § 404.1520.

**III.    Discussion:**

Plaintiff argues that the ALJ erred in his credibility assessment, and erred in rejecting the physicians' opinions. (Doc. 9).

The ALJ recognized hat Plaintiff had a long history of complaints or right arm pain and swelling with difficulty lifting and writing, since at least January of 2005. (Doc. 12, p. 22). He addressed the medical evidence relating to the period prior to the relevant time period, noting that between 2005 and 2012, Plaintiff had been diagnosed with: right lateral epicondylitis; right biceps tendinitis; right forearm tendinitis; osteoarthritis in her arms and shoulders; lumbago; depression; GERD; osteoarthritis-multiple sites; fatigue and malaise; arthritis/arthralgia of the right hip; acute low back pain; insomnia; neck and back pain; knee and hip pain; and cervicalgia. (Doc. 12, p. 22).

On July 8, 2012, while Plaintiff was working the night shift as dispatcher at Central EMS, she injured her right shoulder when she dropped a mop bucket of water, and complained of radiation to her neck. (Doc. 12, p. 243). Plaintiff was diagnosed with neck and back strain. (Doc. 12, p. 240). Plaintiff was thereafter treated by Dr. Mark A. Bonner, who, between July 9, 2012 and July 27, 2012, diagnosed Plaintiff with cervical strain, recurrent;

headache, recurrent; and sprain of neck, stable. (Doc. 12, pp. 272, 276). Plaintiff thereafter underwent physical therapy, and in an August 27, 2012 report, it was reported that she attended seven physical therapy visits and missed five visits between August 1, 2012 and August 27, 2012. (Doc. 12, p. 245). Plaintiff reported elimination of her neck pain, and it was reported that she had met her goals, and discharge was recommended. (Doc. 12, p. 245). Dr. Bonner reported on August 30, 2012, that her neck pain was improving. (Doc. 268, 280). Upon examination, Dr. Bonner reported that Plaintiff's cervical spine was tender to palpation, that her extremities appeared normal, there was no edema or cyanosis, and he diagnosed Plaintiff with sprain of neck, improved. (Doc. 12, p. 269). He also reported no permanent impairment. (Doc. 12, p. 280).

On October 1, 2012, Plaintiff reported to Dr. Bonner that physical therapy had helped, but she was no longer receiving traction therapy, but was still performing neck exercises at home. (Doc. 12, p. 265). At that time, there was normal musculature, no skeletal tenderness or joint deformity, her extremities appeared normal, and there was no edema or cyanosis. (Doc. 12, p. 266). Dr. Bonner did not want Plaintiff to return to work until she was seen by Dr. Michael W. Morse, a neurologist. (Doc. 12, p. 282).

Plaintiff saw Dr. Morse on November 6, 2012. (Doc. 12, p. 284). Dr. Morse reported that Plaintiff had been to physical therapy "without benefit." (Doc. 12, p. 284). Dr. Morse performed an EMG/NCV of Plaintiff's right upper extremity, which was normal. (Doc. 12, p. 284). He also reported that Plaintiff was an occasional smoker, and her muscle strength in her upper and lower extremities was normal, as was the muscle tone. (Doc. 12, p. 285). No atrophy and no abnormal movements were seen, her attention span and concentration were normal, she had 2+ deep tendon reflexes in her upper and lower extremities, and her gait and

station were normal. (Doc. 12, p. 285). Dr. Morse further reported that Plaintiff had normal range of motion of her cervical and lumbar spine, negative straight leg raise bilaterally, no extremity edema, tenderness, restricted range of motion or deformity. (Doc. 12, p. 286). Dr. Morse concluded that Plaintiff had what sounded more like a shoulder injury, because her neurological exam and EMG/NCV were normal, thus excluding a brachioplexus neuropathy, and making a cervical radiculopathy unlikely. (Doc. 12, p. 286). Dr. Morse reported that Plaintiff had excellent range of motion in her arm and neck, and he wanted to obtain her x-ray reports and the physical therapy evaluation. (Doc. 12, p. 286). After receiving and reviewing those, on November 12, 2012, Dr. Morse acknowledged that the physical therapist felt Plaintiff's pain was related to her cervical spine, but Dr. Morse was not sure she did not have an underlying impingement or rotator cuff tear. (Doc. 12, p. 289). He wanted to check a MRI of her cervical spine and wanted her to see a shoulder specialist. (Doc. 12, p. 290). A MRI of Plaintiff's cervical spine was performed on November 13, 2012, which, according to Dr. Morse on December 5, 2012, showed small midline disc bulges, which he did not believe to be secondary to the accident or causing her problems. (Doc. 12, p. 292).

Plaintiff also saw Dr. Andy D. Heinzelmann, an orthopedist, on November 20, 2012. (Doc. 12, p. 298). Dr. Heinzelmann reported that Plaintiff had full active motion of her right shoulder, demonstrated 5/5 strength to forward elevation in external rotation, and had mildly positive impingement signs. (Doc. 12, p. 299). X-rays of Plaintiff's right shoulder showed no obvious fractures or dislocations, snd Dr. Heinzelmann recommended a MRI of her right shoulder. (Doc. 12 p. 299). He also indicated that Plaintiff should perform "no overhead work and no greater than 10 pounds below shoulder level." (Doc. 12, p. 277).

In Dr. Morse's report dated December 5, 2012, he reported that he did not find any neurologic pathology at that time and that the bulging discs were not related to the accident, that she had no focal neurological deficits on her examination, and that Plaintiff had no restrictions from his standpoint. (Doc. 12, p. 293).  After obtaining the results of the MRI of her right shoulder, on December 6, 2012, Dr. Heinzelmann reported Plaintiff had no evidence of acute findings. (Doc. 12, p. 297). She had a small partial rotator cuff tear on the articular side that appeared chronic in nature, mild arthropathy of the AC joint, and mild subdeltoid bursitis. (Doc. 12, p. 297). He believed none of those findings correlated with any symptoms about her shoulder on her exam, because she had full strength with forward elevation and external rotation without pain about the shoulder. The impression he gave was normal right shoulder, and cervicalgia that could be as a result of muscle spasm. (Doc. 12, p. 297). He concluded that Plaintiff had no permanent impairment of her right shoulder, and had full release to activities as tolerated for her right shoulder. In his opinion, the diagnosis was cervicalgia. (Doc. 12, p. 297). His recommendation for treatment was to possibly receive more physical therapy with modalities and a TENS unit about the base of the neck. (Doc. 12, P. 297). There is no indication in the record that Plaintiff sought to receive more physical therapy or the use of a TENS unit.

On January 4, 2013, Dr. Gary Moffitt, of the Arkansas Occupational Health Clinic, examined Plaintiff and found there was no tenderness to palpation of Plaintiff's neck or any muscle tightness; her motion was "quite good of her neck;" she had normal upper extremity reflexes and a normal grip bilaterally; she had normal range of motion of both shoulders; there was no stiffness in the shoulder; and there was minimal weakness with resistance to abduction, but it was worse on the left than on the right. (Doc. 12, p. 308). Dr. Moffitt opined

7

that since there were no objective medical findings, he saw no reason for Plaintiff to have any job restrictions, and that she should be able to do her past work as a dispatcher. (Doc. 12, p. 308).

On May 1, 2013, Terry Efird, Ph.D., conducted a Mental Diagnostic Evaluation of Plaintiff. (Doc. 12, p. 321). Plaintiff reported that she had been prescribed Klonopin by her primary care physician, and that the current medication had been beneficial. (Doc. 12, pp. 321-322). Dr. Efird diagnosed Plaintiff with major depressive disorder, moderate, and generalized anxiety, and gave her a GAF score of 55-65. (Doc. 12, p. 323). He concluded that Plaintiff appeared to be capable of performing basic work like tasks within a reasonable time frame. (Doc. 12, p. 324).

On October 1, 2013, Dr. Bonner assessed Plaintiff with polyarthritis, sub-optimal control, bilateral knee pain, sub-optimal control, and pharyngitis, acute. (Doc. 12, p. 391). Plaintiff saw Dr. Bonner on March 21, 2014, complaining of arthralgias and anxiety. (Doc. 12, p. 392). Plaintiff reported improvement of her initial anxiety symptoms. (Doc. 12, p. 392). Dr. Bonner diagnosed her with osteoarthritis, multiple sites, sub-optimal control; anxiety state, stable; encounter for long-term (current) use of medications, routine; and Vitamin D deficiency, recurrent. (Doc. 395).

On November 4, 2013, Dr. Bonner completed a Physical RFC Assessment. (Doc. 12, p. 328). He basically found that Plaintiff suffered from severe limitations, with the result being she would not be able to perform full-time work. (Doc. 12, pp. 328-330).

On April 29, 2014, Plaintiff saw Dr. Thomas R. Dykman for the first time. (Doc. 12, p. 401). According to Dr. Dykman, there was normal range of motion and no evidence of synovitis nor evidence of joint dislocation, subluxation of laxity in both upper and both lower

extremities, and motor strength appeared normal without atrophy or abnormal tone in the neck, both upper or both lower extremities unless noted. (Doc. 12, p. 403). She had a mild slowing of gait. (Doc. 12, p. 408). X-rays of her lumbar spine revealed mild degenerative disc disease, minimal osteoarthritis and segmental abnormality of sacrum. (Doc. 12, p. 451). On May 9, 2014, Dr. Dykman wrote a letter to Plaintiff, advising her that her lab tests were normal, including the blood tests for rheumatoid arthritis. (Doc. 12, p. 444). He opined that it was likely that her positive ANA related to her family's history of rheumatoid arthritis, but would need to periodically reassess her for problems that could relate to the positive ANA at her future office visits. (Doc. 12, p. 444). He further concluded that the findings suggested her pain related to fibromyalgia. (Doc. 12, p. 444).

On May 23, 2014, Dr. Dykman completed a Fibromyalgia RFC assessment, where he found Plaintiff could not work any hours a day, and imposed further severe restrictions on Plaintiff's ability to function. (Doc. 12, p. 444).

### A. Credibility Analysis and RFC Determination:

With respect to credibility, the ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the Eighth Circuit has

observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

In his decision, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence and limiting effects of the symptoms were not entirely credible. (Doc. 12, p. 22). The ALJ addressed Plaintiff's daily activities, noting that Plaintiff was able to take care of her personal needs, drive, shop, handle finances, and perform household chores, except as limited by pain. (Doc. 12, p. 19).

In addition, a MRI and x-rays of Plaintiff's cervical spine only revealed loss of the normal cervical lordotic curve and small disc bulges at C3-4, C5-6 and C6-7, and there was no neural element compromise at these levels. (Doc. 12, p. 291). X-rays of Plaintiff's right shoulder showed no obvious fractures or dislocations, and a MRI of the right shoulder revealed a surface tear, mild arthropathy, and minimal subdeltoid bursitis. (Doc. 12, pp. 299-300). Neither Dr. Morse nor Dr. Heinzelmann placed any restrictions on Plaintiff's activities. (Doc. 12, pp. 293, 297).

The Court therefore agrees with Defendant that the ALJ largely credited Plaintiff's alleged subjective symptoms by restricting her to sedentary work and no overhead reaching.

With respect to the ALJ's RFC determination, RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. Gilliam's v. Barnhart, 3 93 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20

C.F.R. § 404.1545(a)(3).  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003).  "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.  "The ALJ is permitted to base its RFC determination on 'a non-examining physician's opinion *and* other medical evidence in the record.'" Barrows v. Colvin, No. C 13-4087-MWB, 2015 WL 1510159 at *11 (N.D. Iowa Mar. 31, 2015)(quoting from Willms v. Colvin, Civil No. 12-2871, 2013 WL 6230346 (D. Minn. Dec. 2, 2013).

With respect to the weight given to the opinions of treating physicians, "[a] claimant's treating physician's opinion will generally be given controlling weight, but it must be supported by medically acceptable clinical and diagnostic techniques, and must be consistent with other substantial evidence in the record." Andrews v. Colvin, No. 14-3012, 2015 WL 4032122 at *3 (8th Cir. July 2, 2015)(citing Cline v. Colvin, 771 F.3d 1098, 1102 (8th Cir. 2014)).  "A treating physician's opinion may be discounted or entirely disregarded 'where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions.'" Id.  "In either case-whether granting a treating physician's opinion substantial or little weight-the Commissioner or the ALJ must give good reasons for the weight apportioned." Id.

In his decision, the ALJ gave great weight to the opinions of Dr. Efird, finding that they were consistent with the ability to perform work at least at the unskilled level. (Doc. 12,

p. 23). With respect to the opinions of Plaintiff's primary care physician, Dr. Bonner, the ALJ gave them some weight, but concluded that the severity of limitations he imposed on Plaintiff's abilities was not supported by the medical evidence. (Doc. 12, p. 24). He found that although Dr. Bonner limited Plaintiff to working less than two hours in an 8—hour workday, Plaintiff testified that she was driving short distances, shopping, preparing small meals, and performing much of her housework. (Doc. 12, p. 24).

The ALJ gave the opinions of Dr. Dykman some weight, but found that Dr. Dykman's finding that Plaintiff was unable to work at all was not supported by the other medical evidence of record. (Doc. 12, p. 25). He further noted that Plaintiff was leading a relatively active lifestyle, and that Dr. Dykman's statement that Plaintiff could not ambulate effectively was "clearly not the case." (Doc. 12, p. 25).

The ALJ gave the State agency medical consultants some weight, but concluded that Plaintiff was more limited both physically and mentally than determined by the state agency consultants. (Doc. 12, p. 25).

The Court finds that the severe limitations given by Dr. Bonner and Dr. Dykman are inconsistent with their previous records, and after reviewing the record as a whole, the Court finds there is substantial evidence to support the ALJ's credibility analysis and RFC determination, including the weight he gave to the various opinions.

**B. Hypothetical Question to VE:**

After thoroughly reviewing the hearing transcript along with the entire evidence of record, the Court finds that the hypothetical questions the ALJ posed to the VE fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005).  Accordingly, the Court finds that

the VE's opinion constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff would be able to perform jobs such as credit card call operator, cutter/paster, and photocopy document preparer. <u>Pickney v. Chater</u>, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

**IV.      Conclusion:**

Accordingly, having carefully reviewed the record, the Court finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision is hereby affirmed.   The Plaintiff's Complaint should be, and is hereby, dismissed with prejudice.

IT IS SO ORDERED this 20th day of January, 2017.


/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE